10-1733.101-JCD                                              October 13, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DANIEL RIVERA, STEPHEN KENSINGER,   )
DEBORAH JOY MEACOCK, and            )
REBECCA SCHEUNEMAN,                 )
                                    )
        Plaintiffs,                 )
                                    )
    v.                              )   No. 10 C 1733
                                    )
ALLSTATE INSURANCE COMPANY and      )
JUDY GREFFIN,                       )
                                    )
        Defendants.                 )

## MEMORANDUM OPINION

Before the court are defendants' motions to dismiss certain counts of the complaint. For the following reasons, defendant Judy Greffin's motion is denied in part and granted in part, and defendant Allstate Insurance Company's motion is denied.

## BACKGROUND

This is an action arising out of plaintiffs' former employment with defendant Allstate Insurance Company ("Allstate"). Plaintiffs were employed in the equity division of Allstate, which managed equity portfolios for Allstate's pension plans and Allstate Property & Casualty Company as well as convertibles for Allstate Financial. At the time their employment was terminated in December 2009, plaintiff Daniel Rivera was the head of the equity division, and plaintiffs Stephen Kensinger, Deborah Joy Meacock, and Rebecca

Scheuneman comprised the growth team. The growth team was responsible for managing growth portfolios of individual securities. At the time of the events described in the complaint, defendant Judy Greffin was Allstate's chief operating officer, and then its chief investment officer ("CIO"); she was CIO at the time of plaintiffs' discharge.

The complaint alleges that in addition to annual salaries, some members of the equity division were eligible to earn additional bonus compensation based upon a "pay for performance" ("PFP") plan. Generally, under the PFP plan, bonuses were dependent on the return on investments from the equity division's managed portfolios, in addition to department-wide and company-wide results.

In mid-2009, Allstate conducted an investigation of the equity division for ethical violations, and it disbanded the division in October 2009. During that month, attorneys for Allstate interviewed Rivera and implied during the questioning that "Rivera and the growth team had timed their portfolio activity so that they could manipulate the Dietz calculation[1] to embellish their performance measurement numbers used to calculate bonus compensation." (Compl. ¶ 205.) Kensinger and Meacock were asked

---

[1] The complaint explains that the "Modified Dietz" method is a calculation used to measure the performance of an investment portfolio. (Compl. ¶ 50.)

during their meetings with the attorneys whether they had tried to "game" the performance measurement system. (Compl. ¶¶ 180, 192.)

On December 3, 2009, plaintiffs were asked to meet individually with Brett Winchell, a representative of Allstate's human resources department. Winchell told each of them that they were being terminated for cause for violating the conflict of interest provision of Allstate's code of ethics with regard to the PFP plan. Winchell also stated that they would not be receiving a severance package or additional compensation. When asked, Winchell would not elaborate on specifics regarding what the plaintiffs did to warrant a termination for cause. When asked what Allstate would tell prospective employers of plaintiffs, Winchell replied that Allstate would not inform them that plaintiffs had been terminated for cause.

At the time the equity division was disbanded, it had nineteen members. Two of those employees remained with Allstate. Of the remaining seventeen employees, five were dismissed for cause; plaintiffs are four of those five employees. Plaintiffs allege that Allstate has "never informed" them "what they did to violate the code of ethics." (Compl. ¶ 240.)

The complaint also alleges that after plaintiffs' employment was terminated, Greffin informed other Allstate employees of the reasons for their termination. Greffin allegedly told Allstate employees several things:

- Plaintiffs had added to portfolios in a manner that would increase and/or minimize damage to their performance calculation under the PFP plan.
- Plaintiffs had raised cash from the portfolios in a manner that would increase and/or minimize damage to their performance calculation under the PFP plan.
- Plaintiffs were timing trades in order to maximize their potential bonus compensation under the PFP plan.
- Plaintiffs were using the Dietz calculation to increase their work performance measurements.
- Plaintiffs were manipulating the data under the PFP plan for their own financial benefit.
- Plaintiffs were "gaming" the PFP plan.
- Plaintiffs had violated the conflict of interest provision of Allstate's code of ethics.

(Compl. ¶¶ 241-248.) It is alleged that these statements were false and defamatory and caused damage to plaintiffs.

The complaint contains three counts. Count I is a Fair Credit Reporting Act claim against Allstate; plaintiffs allege that investigators for Allstate prepared some kind of communication or investigative report summarizing their findings regarding plaintiffs' conduct and that as a result of the investigation and report, Allstate terminated plaintiffs for cause. According to plaintiffs, Allstate willfully failed to disclose to them a "summary containing the nature and substance of the communication" upon which their termination was based, as required by 15 U.S.C. § 1681a(x)(2). Allstate intends to file an answer to Count I and does not move to dismiss the claim.

Count II is a defamation claim against both Allstate and Greffin. Count III is a claim against Greffin for tortious

interference with prospective economic advantage. Allstate moves to dismiss Count II, and Greffin moves to dismiss Counts II and III.

## DISCUSSION

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). Under federal notice-pleading standards, a complaint need not contain "detailed factual allegations," but it must have more than mere "labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obligated to provide the factual grounds of his entitlement to relief, and a "formulaic recitation" of the elements of a claim will not do. Id. The complaint must contain sufficient facts to raise a plaintiff's right to relief above a "speculative" level, id. at 555, and the claim must be "plausible on its face," id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). When evaluating a motion to dismiss a complaint, we must accept as true all factual allegations in the complaint, but not its legal conclusions. Id. at 1949-50.

A. **Defamation (Count II)**

Greffin argues that plaintiffs' defamation claim must be dismissed because it is not alleged with specificity.[2] According to Greffin, plaintiffs must allege the content of the allegedly defamatory statements she made, when and where the statements were made, and to whom they were made. Greffin contends that the complaint does not meet the pleading standards outlined in Twombly and Iqbal and does not provide the detail necessary to enable defendants to form responsive pleadings.

We disagree. Greffin essentially argues for application of the heightened pleading standard of Rule 9(b), and in so doing misconstrues Twombly and Iqbal. The particularity requirements of Rule 9(b) do not apply to defamation claims, and Twombly and Iqbal do not hold otherwise. As set forth above, under the Twombly/Iqbal standard, plaintiffs must plead facts that allow us to draw the reasonable inference that the defendant is liable for the misconduct alleged. See Iqbal, 129 S. Ct. at 1949. Plaintiffs have met this standard; they set out much more than bare recitations of the elements of a defamation claim. They allege that Greffin was involved in their terminations and that she made several particular untrue and defamatory statements about the reasons for plaintiffs' terminations to other Allstate employees. The claim therefore has facial plausibility, and plaintiffs need

---

[2] Allstate has filed a bare-bones motion that adopts Greffin's arguments.

not provide additional details regarding the "context" of the statements, as Greffin asserts. We reject Greffin's contention that she lacks notice of the claim and cannot effectively draft responsive pleadings. The complaint adequately apprises defendants of the substance of the allegedly defamatory statements. Further details can be developed in discovery.

Greffin points out that some district judges in the Northern District of Illinois have required plaintiffs to plead defamation with some level of specificity. See, e.g., Dry Enters., Inc. v. Sunjut AS, No. 07 C 1657, 2008 WL 904902, at *4 (N.D. Ill. Mar. 31, 2008). The Seventh Circuit has not held that there are any special pleading requirements for defamation claims, and we believe that the only pleading standard that applies to these claims is the Iqbal standard. As noted by our colleague Judge Gottschall, "while courts give lip service in to an *in haec verba* pleading requirement, at least in this district, a plaintiff need not allege the defamatory language verbatim." Emery v. Northeast Ill. Reg'l Commuter R.R. Corp., No. 02 C 9303, 2003 WL 22176077, at *7 (Sept. 18, 2003). In response to the Emery defendants' argument that the plaintiff's defamation claim should be dismissed for failure to plead the time, place, content, speaker, and listener of the alleged defamatory matter, Judge Gottschall also observed that "[n]o court in this district has ever required that degree of specificity for a defamation claim." Id. at *8. Plaintiffs must

- 8 -

simply plead sufficient facts to allow us to reasonably infer that the defendant is liable for the alleged misconduct, and that standard is satisfied here.

Greffin also contends that "[p]laintiffs are unlikely to sustain a defamation claim even if the Complaint did provide the content and context of the alleged defamatory statements," Greffin's Mem. at 2, citing Allstate's Securities and Exchange Commission Form 10-K filing for the fiscal year ending December 31, 2009, in which Allstate states that it "became aware of allegations that some employees responsible for trading equity securities in certain portfolios . . . may have timed the execution of certain trades in order to enhance their individual performance under incentive compensation plans, without regard to whether such timing adversely impacted the actual investment performance of the portfolios." (Greffin's Mem., Ex. A.) In her reply brief, Greffin adds that "the defamation claim is belied by the truth of the 10-K statements." (Reply at 7.) This argument is off base. In deciding a motion to dismiss, we do not evaluate plaintiffs' likelihood of success on the merits. Moreover, we can take judicial notice of a publicly-filed document like a Form 10-K, but only to determine what statements are contained in the document, not for the truth of the content. See George v. Kraft Foods Global, Inc., 674 F. Supp. 2d 1031, 1044 (N.D. Ill. 2009). The fact that the statements in the Form 10-K may be "consistent with,"

- 9 -

as Greffin puts it, the alleged defamatory statements set forth in the complaint is irrelevant.

Defendants' motions to dismiss will be denied as to Count II.

### B. Tortious Interference With Prospective Economic Advantage (Count III)

In Count III, plaintiffs claim that Greffin interfered with their reasonable expectation of "entering and continuing to enter into a valid business relationship with Allstate based on [their] previous employment position[s] with Allstate." (Compl. ¶ 264.) In her motion, Greffin argues that the only statements she is alleged to have made occurred *after* Allstate terminated plaintiffs' employment and therefore cannot be the basis for the tortious interference claim. Plaintiffs' response is that the claim is not based on Greffin's alleged defamatory statements. As the basis for the claim, plaintiffs point to paragraph 266 of the complaint, which states:

> Defendant Judy Greffin unjustifiably and maliciously interfered, preventing Plaintiffs' expectancy from ripening into a valid business relationship and/or further business relationships by falsely accusing Plaintiffs of manipulating the Pay for Performance plan, self-dealing, and directing the occurrence of portfolio activity that would result in the maximization of their bonus compensation and work performance calculation.

Plaintiffs contend that a reasonable inference can be drawn that "these actions" occurred pre-termination and resulted in the terminations. But the the complaint does not sufficiently allege *what* actions are the basis for the claim. It is not sufficient to

merely allege that Greffin "falsely accused" plaintiffs of the misconduct; this is the kind of naked assertion prohibited by Twombly and Iqbal. The only false accusations alleged in the complaint with sufficient factual detail are the statements that are alleged to have been made after plaintiffs' terminations.

Plaintiffs' tortious interference claim fails for an additional reason. Under Illinois law, "[a]n action for tortious interference cannot be maintained against a plaintiff's supervisor for actions undertaken in the supervisor's professional capacity and in furtherance of her duties unless the supervisor acted for the purpose of furthering her own interests or out of a desire to harm the plaintiff." Thakkar v. Station Operators Inc., 697 F. Supp. 2d 908, 930 (N.D. Ill. 2010). The complaint fails to include any facts that allow us to draw the reasonable inference that Greffin acted to further her own interests or to harm plaintiffs. The allegation that Greffin "unjustifiably and maliciously" interfered, Compl. ¶ 266, is far too conclusory.

Accordingly, Count III will be dismissed without prejudice, and plaintiffs will be given leave to amend Count III to cure the deficiencies we have identified, if they can do so.

## CONCLUSION

For the foregoing reasons, defendant Judy Greffin's motion to dismiss Counts II and III of the complaint [16] is denied as to Count II and granted as to Count III. Count III is dismissed

without prejudice, and plaintiffs are given leave to file an amended complaint by October 29, 2010.

Defendant Allstate Insurance Company's motion to dismiss Count II of the complaint [19] is denied.

DATE: October 13, 2010

ENTER: _____
John F. Grady, United States District Judge